Russell FOHN et al., Respondents,

v.

**TITLE INSURANCE CORPORATION OF
ST. LOUIS, a Missouri Corporation,**
Appellant.

No. 58859.

Supreme Court of Missouri,
en banc.

Oct. 13, 1975.

Rehearing Denied and Modified on Court's
Own Motion Nov. 10, 1975.

Morgan M. Moulder, Camdenton, for respondents.

Robert C. Jones, J. William Newbold, Harold A. Tzinberg, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for appellant.

MORGAN, Judge.

Involved herein is a money judgment against a title insurance company in favor of landowners who had unsuccessfully defended the title to a portion of their lands covered by a policy of the company. The appeal therefrom by the insurer has now been transferred from the Court of Appeals and we consider the same as on original appeal.

On or about the first day of May, 1966, plaintiffs contacted a local real estate broker concerning the prospects of purchasing a certain tract of land in Camden County. The tract contained 24.76 acres, exclusive of highways, and was located about two miles north of Camdenton on State Highway No. 5. The owners resided in Los Angeles, California. The broker handled the transaction by mail and on May 10, 1966, the property was conveyed to plaintiffs by warranty deed for a consideration of $6,400 and the same was filed of record on May 21, 1966.

Shortly thereafter, plaintiffs made application for title insurance with defendant and a policy was issued on June 1, 1966, which insured plaintiffs in the amount of $20,000 against "loss or damage" which they "shall sustain" by reason of "[a]ny defect in . . . the title" to the property.

Soon after receiving their deed, plaintiffs set to work tearing down fences, cutting brush and clearing the land so that surveyors could plat it for a proposed shopping center and a number of dwelling houses.

At the time of purchase, there were two signs on the property. One advertised Bridal Cave (the entrance to which was directly across new State Highway No. 5) and the other advertised Don's Boat Dock. An attorney for plaintiffs notified the sign owners that they had to be removed and that of Don's Boat Dock was; however, a representative of Bridal Cave advised the plaintiffs that "We have a deed to this land." This occurred subsequent to the issuance of the title policy by defendant. Work continued for a few more days until it was halted by an injunction which followed the filing of a suit by Bridal Cave against plaintiffs. At issue therein was the ownership of a portion of the property described in the warranty deed to plaintiffs and described in the title policy. Plaintiffs notified defendant of the action pending against them and requested defendant to appear and defend the same. Defendant failed to respond in any manner, so plaintiffs hired their own counsel and defended the suit which resulted in a judgment in favor of Bridal Cave. As a consequence, plaintiffs were "perpetually enjoined from asserting any right, title or interest" in and to a .52-acre triangular portion of the tract—which had provided extensive frontage (559.7 feet) on present State Highway No. 5.

Thereafter, plaintiffs in reliance on their title policy sued defendant for $20,000 damages with interest thereon, $2,000 for vexatious refusal to pay and attorney fees in the sum of $6,200 ($1,200 in the losing effort to defend the title and $5,000 in the present action).

The trial court, sitting without a jury, found "all of the issues for the plaintiffs" and granted the relief prayed for. On appeal, defendant has raised five points of alleged error which will be considered in its order of statement.[1]

■ First, it is urged that plaintiffs are entitled to no recovery because (a) they did not rely on defendant's policy in purchasing the land and (b) they failed to disclose to defendant in writing the existence of the Bridal Cave sign as required by the policy of title insurance. Although subpoint (a) appears to be rather frivolous, we recognize the one case cited thereunder. It is *Lawyers Title Insurance Corp. v. Research Loan & Investment Corp.,* 361 F.2d 764 (8th Cir. 1966), which in no way supports the principle suggested. Therein, the court did not deny recovery by the insured because the property was purchased prior to application for the insurance, but because it was found that the insured had "assumed" certain encumbrances (four deeds of trusts) which in view of such agreement were specifically excluded from coverage. The fact plaintiffs did not rely on defendant's policy in making their purchase is irrelevant. "A present owner who insures his own title, which subsequently proves to be defective, although in fact he has lost nothing because he never did have the interest he supposed he had, may recover for the loss of what he supposedly had . . . " 45 C.J.S. Insurance § 968, p. 1162. As to sub-point (b), the short answer is that the policy did not require disclosure of signs. "Conditions and Stipulations" thereof did exclude coverage from defects, liens, encumbrances and adverse claims *known to the insured* and not shown by the public records, but defendant has failed to show that plaintiffs knew about the title defect which existed. They did know of the two signs, in a lake area known for an untold number of signs, but it would be unreasonable to equate the same with knowledge that Bridal Cave or Don's Boat Dock was vested with a fee simple title to the property by means not reflected in public records. In this connection, the broker testified that: "We just assumed that the signs would be removed whenever

1. Counsel presenting defendant's appeal did not participate in the trial of the cause.

we asked them to be removed . . . Normally I don't have any trouble with signs." The point is ruled against defendant.

Second, it is urged that the trial court erred in receiving into evidence carbon copies of two letters sent by plaintiffs' former counsel reference the judgment obtained by Bridal Cave because they violated the best evidence rule. Whether or not such action was erroneous is unimportant in this case for the reason defendant has not challenged the sufficiency of the notice of loss tendered by plaintiffs in compliance with the provisions of the policy. The point is without merit.

Third, defendant urges a two-fold contention: (a) the trial court adopted the wrong measure of damages and (b) plaintiffs failed to submit any credible evidence of loss.

As to (a), defendant's theory of damages is that plaintiffs can recover only for the value of the .52-acre portion which was lost. Plaintiffs' theory, on the other hand, is that the proper measure of damages is the difference between the value of the entire tract of 24.76 acres and the value of that part which remained after severance and loss of the .52-acre piece. To sustain its position, defendant quotes a portion of an annotation entitled "Measure, extent, or amount of recovery on policy of title insurance" in 60 A.L.R.2d 972, at 975, to-wit: "In some cases it has been held that for an outstanding interest in fee or for a deficiency in area, the insured could recover the value of the interest or land lost, while in other cases, upon a distinction made between agricultural land and urban property, it has been held that for a deficiency in urban land the insured was entitled to recover not only the value of the land lost, but also indemnity for loss of its use and consequential damages." Similar observations may be found in 15 Couch on Insurance 2d, § 57:183, pp. 806–807 and 9 Appleman, Insurance Law and Practice, § 5217, p. 24. Somewhat in contrast is the conclusion reached in 45 C.J.S. Insurance § 967, at p.

1161, wherein it is said: "Ordinarily it [damages] is measured by the difference between the value of the property insured as it was with the defects insured against and its value as it would have been if there had been no such defects." Nothing could be gained by a detailed discussion of the out-state cases so holding for as said in the A.L.R.2d annotation noted, at p. 978: "The cases contain only a few sporadic statements concerning the criterion of value for measuring an owner's recovery under a title policy." Nevertheless, all cases consistently declare that the insured under a title policy is entitled to recover for the "actual loss" suffered.

The question is one of first impression in this state insofar as title insurance is concerned, but it is one having a fixed answer in other areas calling for a determination of damages suffered by the loss of a portion of a tract of land. For instance, in the area of eminent domain the pattern instruction to guide a jury in awarding damages (where part of property is taken) may be found in MAI–9.02. It, in part, provides: "You must award . . . such sum as you believe is . . . the difference between the fair market value of . . . [the] whole property immediately before the taking . . . and the value of . . . [the] remaining property immediately after such taking . . . ." The "difference" thus found is accepted as the "loss" suffered by the owner of the land. The defendant has not suggested, nor has our own research revealed any persuasive reason why the same approach should not be applicable in this instance. Not only does it appear to be the most fair and accurate method, but its adoption in title insurance cases would contribute toward uniformity in the area of assessment of damages. The trial court properly followed the theory advanced by plaintiffs.

In (b) it is argued that plaintiffs failed to submit any credible evidence of loss. We review plaintiffs' evidence.

A realtor who had been licensed in this state for 20 years, knew the property in issue as he had lived in the Camdenton area

his entire life and, in fact, was born and reared within two miles of the same, testified that the original tract was worth $50,000 or $60,000; and, that the loss of the one-half acre piece along the highway ruined the rest of the tract to such an extent the remainder was worth only $3,000 to $5,000. The witness who had arranged the purchase of the property for plaintiffs had been a real estate broker for 21 years and lived in the area. He testified that the whole tract was worth "$50,000 at least" and the remainder after severance was worth $30,000. The difference of $20,000 was apparently accepted by the trial court. A co-owner of the property gave before and after values of $75,000 and $35,000. Another co-owner gave figures of $100,000 and $56,000, respectively. Defendant offered one witness who estimated the value of the tract lost at $3,500, and he offered no opinion on before and after values.

■ Of the four opinions elicited on plaintiffs' behalf, the most conservative was that adopted by the trial court. Very little effort was made on cross-examination to challenge plaintiffs' witnesses. Nevertheless, it is noted that plaintiffs only paid $6,400 for the entire tract from non-resident (California) sellers. The extent of plaintiffs' bargain becomes obvious but there is no issue in this case which compels us to reject their right to the benefit thereof. The defendant itself, nearly contemporaneous with the purchase, insured the same for $20,000; and, sometime after the loss of the portion along the highway, the remainder was sold for $37,000. With the record as made, the trial court was not bound by the original purchase price of $6,400 and decided the case on the basis of the extremely good deal obtained. Although not developed, perhaps there are factors outside the record which provide an explanation for the divergent figures. At no time did defendant object to the testimony of plaintiffs' witnesses on valuation and their qualifications are not in issue. The only attack defendant marshals is against the weight to be given the testimony. The

trial court, which had the opportunity to judge the demeanor of the witnesses, ruled in favor of plaintiffs. Deference should be accorded that finding. Furthermore, it should be mentioned that the title insurance policy does not relate any amount recoverable for loss under the policy to the purchase price of the property. The point is ruled against defendant.

■ Fourth, defendant submits that prejudgment interest should not have been awarded because plaintiffs' claim was unliquidated. We agree. Denial of the same is based, generally, on the idea that where the person liable does not know the amount he owes he should not be considered in default because of failure to pay. *St. Louis Housing Authority v. Magafas,* 324 S.W.2d 697, 700 (Mo.1959); *Laughlin v. Boatmen's Nat. Bank of St. Louis,* 354 Mo. 467, 189 S.W.2d 974, 978 (1945); *Burger v. Wood,* 446 S.W.2d 436, 443 (Mo.App.1969), and, *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541, 553 (Mo.App.1973).

Fifth, and lastly, defendant urges that the trial court erred in awarding damages and attorneys' fees for vexatious refusal to pay because the law of this state does not authorize the same under a title insurance policy. That law may be found in Section 375.420, RSMo 1969, and reads, in part, as follows:

"In any action against any insurance company to recover the amount of any loss under a policy of . . . *indemnity* . . . or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten percent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict." (Emphasis added.)

■ Being penal in nature, the statute is to be strictly construed; but, where applicable, the judgment may include the

amounts authorized. Defendant's argument that "title" insurance is not specifically mentioned in the statute, and thus the same is not applicable, is rejected. In *Southern Title Guaranty Co., Inc. v. Prendergast,* 494 S.W.2d 154, 158 (Tex.1973), the court stated that "[t]itle insurance is a contract of indemnity." In accord, 9 Appleman, Insurance Law and Practice, § 5217, p. 24 ("A title insurance policy is one of indemnity."); 15 Couch on Insurance 2d, § 57:179, p. 806 ("Title insurance is solely a contract of indemnity."); *Contini v. Western Title Ins. Co.,* 40 Cal.App.3d 536, 115 Cal.Rptr. 257[4] (1974); *Beaullieu v. Atlanta Title & Trust Co.,* 60 Ga.App. 400, 4 S.E.2d 78 (1939); *Booth v. New Jersey Highway Authority,* 60 N.J.Super. 534, 159 A.2d 460[2] (1960); *Maggio v. Abstract Title & Mortgage Corp.,* 277 App.Div. 940, 98 N.Y.S.2d 1011 (1950); *Foehrenbach v. German-American Title & Trust Co.,* 217 Pa. 331, 66 A. 561, 563 (1907), and, *Sattler v. Philadelphia Title Insurance Co.,* 192 Pa.Super. 337, 162 A.2d 22 (1960). We agree with the authorities cited. "Indemnity" insurance is one listed in the statute and the provisions therein are applicable to a title insurance policy.

■ Did defendant's conduct qualify as a vexatious refusal to pay? As in any case, the answer must turn on the particular facts presented. It is sufficient to say that it would be difficult to conceive of an insured being more totally abandoned by his insurer than occurred in this case. If there was a legitimate reason, defendant has failed to present it.

The award of interest on the $20,000 prior to judgment should be deleted but the same is otherwise affirmed. The cause is remanded for entry of judgment accordingly.

All concur.