**Robert ABOUSSIE, et al., Plaintiffs/Appellants/Cross–Respondents,**

v.

**CHICAGO TITLE INSURANCE COMPANY, Ticor Title Insurance Company and Pioneer National Insurance Company, Defendants/Respondents/Cross–Appellants.**

Nos. 69963, 69964, 69965.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 3, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 14, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Jeffrey J. Lowe, St. Louis, for appellant.

Robert Edward Jones, Clayton, for respondent.

CRAHAN, Presiding Judge.

Condominium purchasers and title insurance carriers cross appeal following entry of judgment in favor of selected purchasers on their breach of contract claims, judgment notwithstanding the verdict on their negligence claims and award of a new trial as to damages only for the remaining purchasers. We modify the judgment to reinstate the award of damages for breach of contract in favor of those purchasers who sold their property prior to judgment, affirm the judgment notwithstanding the verdict on purchasers' negligence claims and reverse the award of a new trial.

Plaintiffs are all purchasers of one or more condominium units in a development originally called Breckenridge on the Lake, now known as the Mariana Bay Condominiums, a hotel condominium complex located at the Lake of the Ozarks. All of the Plaintiffs obtained title insurance from Chicago Title Insurance Company, Ticor Title Insurance Company, or Ticor's predecessor, Pioneer National Insurance Company. At the time of Plaintiffs' purchases, the condominium declaration included what was known as the Old Recreation Building as a common area of the complex. The condominium developer, however, did not own the Old Recreation Building at the time it was originally included in the declaration.

The developer eventually acquired the Old Recreation Building in December, 1980. Later, through a series of transactions, the developer attempted to withdraw the Old Recreation Building from the declaration and to transfer it to other individuals or entities. Title to the Old Recreation Building eventually ended up in the hands of an entity known as BOTL Management in 1987. In amending the declaration, however, the developer failed to obtain the written consent of all existing unit owners as required by the declaration for withdrawal of common elements.

In 1988, the Master Condominium Association ("MCA"), an organization made up of separate condominium associations representing each unit of the complex, hired an attorney to sever the developer's relationship with the complex. The developer owed a lot of money on the complex and its bills were not being paid. At one point, the developer had mentioned selling off property of the complex.

In the course of his representation, the attorney hired by MCA performed a title search and learned of various defects in Plaintiffs' titles, including developer's lack of ownership of the Old Recreation Building at the time it was included in the declaration, developer's improper attempt to withdraw the building from the declaration without obtaining the consent of all unit owners, and developer's attempts to deed the property to others.[1] Eventually, a quiet title suit was initiated, resulting in a judgment which divested BOTL of the Old Recreation Building and decreed it to be the property of MCA. MCA then sold the building to BOTL and the unit owners leased it back with a right to purchase.

Plaintiffs later filed the instant action against Defendant title insurers seeking recovery based on breach of contract and negligence. In their breach of contract claims, Plaintiffs sought to recover the difference between the fair market value of the property insured with the title defects discussed above and the fair market value of the same

---

1. At trial, Plaintiffs offered evidence of an additional title defect, failure to provide a right of access to the Old Recreation Building, a right insured under Defendants' titles policies.

property without the title defects. In their negligence claims, Plaintiffs sought to recover their out-of-pocket costs associated with ownership of the units, *e.g.*, maintenance, mortgage interest, insurance, taxes, loan costs, etc., on the theory that they would not have purchased their units if Defendants had not negligently failed to discover and inform them of the defects.

The jury rendered judgment on both counts in favor of all Plaintiffs, awarding damages of $12,500.00 per unit owned on the breach of contract claims and various amounts in excess of $20,000.00 per unit on the negligence claims. Judgment was entered accordingly. Later, in response to Defendants' timely motion for judgment notwithstanding the verdict or new trial, the trial court modified the judgment. The trial court held that Plaintiffs were entitled to a single recovery in tort or breach of contract and that the proper measure of damages on both counts was the difference in fair market value as determined by the jury on the breach of contract claim. It therefore reduced the judgment to $12,500.00 per unit for all Plaintiffs who still owned their units at the time of trial. The trial court further held that three Plaintiffs, the Barricks, the Bottanis and Ms. Landry, did not have an insurable interest because they had transferred their units prior to trial. The court therefore found that these Plaintiffs could maintain an action for negligence only, not breach of contract. Because the negligence claim did not submit the proper measure of damages, however, the trial court granted a new trial as to damages only for these Plaintiffs.

In their first two points, Plaintiffs urge that the trial court erred in limiting their recovery to the difference in fair market value awarded on their breach of contract claims. Plaintiffs assert that the damages sought in their negligence claims, out-of-pocket expenditures for such items as maintenance, mortgage interest, insurance, taxes, loan costs, etc., are neither duplicative of nor inconsistent with the award of the difference in fair market value on their contract claims. Alternatively, Plaintiffs urge that they should have been permitted to elect to recover the higher amounts awarded on their negligence claims. We disagree.

Title insurance is a contract to indemnify the insured for any losses incurred as a result of later found defects in title.[2] *First Federal Savings and Loan Ass'n v. Transamerica Title Ins. Co.*, 19 F.3d 528, 530 (10th Cir.1994). Recovery is generally limited to the amount necessary to remove the title defect or the difference between the fair market value of the property conveyed and its fair market value had it been as described in the title policy. *Fohn v. Title Insurance Corporation of St. Louis*, 529 S.W.2d 1, 4 (Mo. banc 1975). Under certain circumstances, a title insurer may be liable for breach of contract or negligence. *See, e.g., Rosenberg v. Missouri Title Guar. Co.*, 764 S.W.2d 684 (Mo.App.1988); *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468 (Mo.App. 1987). However, at least in cases involving a partial and not a total failure of title, the measure of damages is the same—*i.e.*, the difference in fair market value or the cost of restoring title, whichever is less, up to the limits of the policy. *Evinger*, 726 S.W.2d at 475; *Fohn*, 529 S.W.2d at 4.

This case involves only a partial failure of title. Thus, Plaintiffs are fully compensated by the award of damages on their contract claim, which was properly awarded based on the difference in the fair market value of the properties with and without the defects established by the evidence. The damage awards on the negligence and breach of contract claims cannot be reconciled because they are based on two contrary assumptions. The contract award assumes that Plaintiffs retain the value of the property with the defects while the negligence award assumes Plaintiffs would never have purchased it if they had known of the defects. Because Plaintiffs retain their respective interests in the land, an award of their out-of-pocket costs associated with ownership of the units

---

2. Contrary to Defendants' contentions at the oral argument, Plaintiffs are not required to await an adjudication that their title is encumbered before bringing an action on the policy. *Davis v. Stewart Title Guaranty Co.*, 726 S.W.2d 839, 848 (Mo.App.1987); *Janssen v. Guaranty Land Title Co.*, 571 S.W.2d 702 (Mo.App.1978).

such as maintenance, mortgage interest, insurance and taxes would result in a windfall. The trial court properly limited Plaintiffs' recovery to the difference in fair market value of the units with and without defects as required by *Fohn*. Plaintiffs were not entitled to elect the improper measure of damages awarded on their negligence claims. Point denied.

■ Plaintiffs' third and fourth points dispute the trial court's award of judgment notwithstanding the verdict on the contract counts and a new trial on damages only on the negligence counts for the Barricks, the Bottanis and Ms. Wills–Landry because they no longer owned their units at the time of trial. Paragraph 2 of the Conditions and Stipulations of the policies at issue provides that policy coverage will continue after conveyance so long as the insured: (1) retains an estate or interest in the land; (2) holds an indebtedness secured by a purchase money mortgage given by a purchaser from such insured; or (3) has liability by reason of conveyance of warranty by the insured in a transfer or conveyance of such estate or interest.

The Barricks and Bottanis conveyed their properties to the MCA in exchange for forgiveness of unpaid assessments. At the time of the conveyances, this action based on the title defects had commenced. The MCA did not assume their mortgages secured by the properties and the Barricks and Bottanis continued to pay on the mortgages at the time of trial. Ms. Wills–Landry conveyed her property to Developer in exchange for two other units in 1984, before the title defect was known. The Developer assumed the mortgage payments on that unit. However, when Developer failed to make those payments, Wills–Landry received that unit back. She was still making mortgage payments on that unit at the time of trial. Thus, Ms. Wills–Landry necessarily remained secondarily liable on the mortgage at all times.

■ Defendants maintain that the Barricks, Bottanis and Wills–Landry had no compensable damages under a breach of contract theory because they no longer held an insurable interest in the subject property. However, case law provides that an obligor on a promissory note, secured by a deed of trust on the property, has an insurable interest in that property even if the obligor no longer owns the property.

In *Wrausmann v. Kansas City Fire & Marine Ins. Co.*, 477 S.W.2d 741, 742 (Mo. App.1972), a manager purchased a house and titled it in his secretary's name. The secretary borrowed money from bank using house as security. The manager personally guaranteed the note. The secretary then conveyed the house to the manager. Later, a fire insurance policy was taken out on the house in the secretary's name. The court found that the secretary had an insurable interest in the house stating that, "although a person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable." *Id.* at 743.

In *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 706 (Mo.1984), the husband was awarded the house after a divorce and the wife remained personally liable on the three mortgage notes secured by the house. The husband died and the wife took possession of the house and insured the house against fire in her own name. The court held that the wife had an insurable interest in the property in spite of her lack of title since she was liable on the note secured by a deed of trust on the property.

Because the Barricks and the Bottanis remained primarily liable and Wills–Landry remained secondarily liable on the mortgages at all times, they retained an interest in the properties they conveyed. Therefore, they were entitled to recover under the breach of contract theory which instructed the jury on the proper measure of damages. Accordingly, we hold that it was error to enter judgment notwithstanding the verdict on these claims and reinstate the award of damages of $12,500.00 each in favor of Plaintiffs Austin and Peggy Barrick, Joseph and Diane Bottani and Jean Wills–Landry against Defendant Chicago Title Insurance Company on their breach of contract claims. In view of our determination that the proper measure of damages on the negligence claims would be the same as the contract claims, the award of a new trial on damages only for these Plaintiffs is reversed and denied as moot.

In their cross appeal, Defendants urge that the trial court erred in (1) refusing to grant a mistrial based on juror misconduct; (2) admitting certain exhibits; (3) overruling their motions for directed verdict on Plaintiffs' negligence claims; (4) refusing to allow the jury to view certain exhibits; (5) failing to grant their motions for directed verdict with respect to the Barricks, the Bottanis and Ms. Wills–Landry; (6) refusing to grant a directed verdict based on the statute of limitations; (7) submitting certain instructions; and (8) refusing to submit their counterclaims for declaratory judgment. We have carefully reviewed these contentions and find them to be without merit. An extended opinion would have no precedential or jurisprudential value. We deny Defendants' points pursuant to Rule 84.16(b).

Judgment is hereby ordered modified to reinstate the judgments for $12,500.00 each in favor of Plaintiffs Austin and Peggy Barrick, Joseph and Diane Bottani and Jean Wills–Landry against Defendant Chicago Title Insurance Company on their breach of contract claims. Award of a new trial for those Plaintiffs for damages only is reversed and denied as moot. Judgment notwithstanding the verdict on all negligence claims is affirmed.

GRIMM and HOFF, JJ., concur.