WEDGEWOOD SQUARE CENTER LIMITED PARTNERSHIP, a Limited Partnership, Appellant,

v.

STEWART TITLE GUARANTY COMPANY, Respondent.

No. SD 30899.

Missouri Court of Appeals, Southern District, Division Two.

June 30, 2011.

Motion for Rehearing and Reconsideration and Transfer to Supreme Court Denied July 20, 2011.

Application for Transfer Denied Oct. 4, 2011.

Steven E. Marsh, Springfield, MO, for Appellant.

James R. Fossard, Springfield, MO, for Respondent.

WILLIAM W. FRANCIS, Jr., Judge.

Wedgewood Square Center Limited Partnership ("Wedgewood") appeals the trial court's judgment denying its claim for damages against Stewart Title Guaranty Company ("Stewart"). Finding no merit to Wedgewood's points, we affirm the judgment of the trial court.

**Factual and Procedural History**

On November 17, 1997, Stewart issued a title insurance policy to Wedgewood—Policy Serial No. CNJP–1597–459557 ("the Elko Policy")—as to one real estate parcel in Elko County, Nevada (the "Elko County property"), and on November 18, 1997,

issued a second title insurance policy to Wedgewood—Policy Serial No. CNJP–1597–459558 ("the White Pine Policy")—as to four real estate parcels in White Pine County, Nevada (the "White Pine County property"). These were lender policies which, *inter alia*, insured against loss or damage by reason of "[a]ny defect in or lien or encumbrance on the title[ ]" as to all five real estate parcels, which secured one promissory note in the principal amount of $347,722.40. The deeds of trust to these properties were executed by Lee and Barbara Reierson (Wedgewood's mortgagors) in favor of Wedgewood, to secure payment of the $347,722.40, as part of a multi-parcel real estate transaction.

In 1999, after the Reiersons defaulted on the Wedgewood loan, Wedgewood asked Stewart to prepare a foreclosure report. On March 15, 1999, Stewart issued a "Preliminary Title Report" ("Report") on the White Pine County property only. Included in the Report, was a $30,000 deed of trust (the "Allison deed of trust") executed by the Reiersons in favor of Thomas G. Allison, the Reiersons' broker on the White Pine County property. This deed of trust purported to have priority over Wedgewood's deed of trust because it was recorded immediately prior to Wedgewood's deed of trust. However, it is unclear from the record presented to us the precise explanation of how the Allison deed of trust was recorded first. That determination is unnecessary for our decision.

On May 17, 2000, Wedgewood filed suit against Stewart and one other defendant, alleging various problems with the underlying real estate transaction. Wedgewood's amended petitions added two additional defendants and included a title policy claim against Stewart asserting that Wedgewood's deed of trust upon the White Pine County property was impaired by the Allison deed of trust. After Stewart and the other three defen-dants each filed an amended motion for summary judgment, the trial court entered summary judgments in favor of each defendant and against Wedgewood. In its judgment, the trial court found the claim against Stewart was premature because Wedgewood had never foreclosed on the mortgage and, thus, Wedgewood's damages had not been liquidated and determined.

On appeal, only the title policy claim against Stewart was reversed and remanded for further proceedings; Wedgewood's other claims of error were denied. *See Wedgewood v. Lincoln Land Title Co., Inc.*, 217 S.W.3d 308 (Mo.App. S.D.2007). This Court reversed and remanded the title policy claim because the trial court had based its grant of summary judgment on the premature filing of the claim, and it noted that "filing a suit prematurely should not prevent a plaintiff from proceeding with an action when it becomes ripe." *Id.* at 311.

In 2006, at the request of Wedgewood, Carroll Gagnier, the owner of Nevada Trust Deed Services, began the process of foreclosing on Wedgewood's deed of trust on the White Pine County property only. Stewart had requested Wedgewood foreclose on the White Pine County property in order to ascertain Wedgewood's damages under the White Pine Policy.

On July 11, 2006, Wedgewood and the Reiersons negotiated a settlement without input or consent from Stewart. At the direction of Wedgewood, Mr. Gagnier stopped the foreclosure and prepared a release of the deed of trust, which was then recorded. The Reiersons paid $375,000 to Wedgewood for a "Full Reconveyance" of the White Pine County property. Wedgewood admitted it released its lien in the settlement with the Reiersons. Wedgewood also gave the Reiersons a full and complete release of any and all claims.

On May 3, 2007, Wedgewood filed a third amended petition against Stewart claiming damages as a result of the Allison deed of trust on the White Pine County property. Wedgewood claimed its secured interest in the White Pine County property had been impaired by the Allison deed of trust which, contrary to specific written instructions, had been recorded by Stewart prior to the Wedgewood deed of trust. It alleged that although Wedgewood had made a claim and demand for Stewart to correct the problem or compensate Wedgewood, Stewart failed to take any action to address the claim or correct the apparent priority of the Allison deed of trust over the Wedgewood deed of trust. Wedgewood asserted "[a]s a result of its foreclosure and collection proceedings, [Wedgewood] recovered the sum of $375,000.00 on the debt to [Wedgewood], resulting in a deficiency of at least $48,027.42[,]" and claimed damages in an amount of at least $48,027.42. Stewart responded that Wedgewood had no claim under the White Pine Policy because it did not liquidate its damages by foreclosing on its interest in the White Pine County property and, in fact, released its deed of trust to the White Pine County property by a "Full Reconveyance" dated July 11, 2006, filed and recorded in the White Pine County Recorder's Office on July 20, 2006. A Full Reconveyance in the State of Nevada is a release of a deed of trust.

Robert Wines, an attorney in Nevada who represented the Reiersons, testified by deposition and stated that the Reiersons insisted on a full release, which was given, and a release of the deed of trust as a condition for the payment to Wedgewood of the sum of $375,000.

At the bench trial, Bradley L. Farney, claims counsel for Stewart, testified Stewart never received notice of a claim arising from the Allison deed of trust. He explained that only after Wedgewood filed its suit against Stewart did Stewart instruct Wedgewood to "define, ascertain, [or] liquidate" its damages caused by the Allison deed of trust. Mr. Farney also testified that if Wedgewood released its lien, or settled without written consent of Stewart, the coverage was terminated under the terms of the White Pine Policy.

Mr. Farney testified that in settling with the Reiersons, and releasing its interest in the White Pine County property, Wedgewood stripped Stewart of its rights to subrogation.

David Denton, a general partner of Wedgewood, testified that in 1999, he called Stewart and requested Stewart remove the Allison lien. Mr. Denton made the decision to settle with the Reiersons for $375,000. When asked why he accepted less than the amount owed on the White Pine County property, Mr. Denton responded:

Mr. Reierson had offered $200,000 in order to get us to release the deeds of trust a month or so after we filed foreclosure notice and that eventually got up to $375,000 which was supposedly the last dollars he had, and the money was coming from the sale of one of the properties. It just seemed to us being not familiar with Nevada, that it was close enough that we would not take the risk of having a bigger problem had we ended up foreclosing on the property.

Mr. Denton felt it was in the best interest of everyone involved to get the money while he could. His explanation for accepting less than the amount owed did not mention an encumbrance resulting from the Allison deed of trust.

The trial court ruled in favor of Stewart on Wedgewood's claim. Stewart requested specific findings of fact and conclusions of law. The trial court found, in part, that Wedgewood did not sell the White Pine County property at a foreclosure sale,

Wedgewood released its deed of trust on the White Pine County property by a Full Reconveyance and as a condition of the $375,000 payment received, and that Wedgewood did not file a notice of claim or a proof of loss with Stewart. This appeal followed.

Wedgewood's initial point appears to allege error in the trial court's judgment in that the White Pine Policy covered any impairment resulting from the Allison deed of trust and required Stewart to take affirmative action to correct, remove, or resolve that defect.[1] Wedgewood's final two points relied on allege the trial court erred in entering judgment in favor of Stewart because: (1) Stewart should have been ordered to pay the foreclosure expenses; and (2) Stewart should have been ordered to pay for vexatious refusal to pay, pursuant to section 375.296 [2] and/or section 375.420. The primary issue for our determination is whether substantial evidence supported the trial court's decision that Wedgewood failed to show it was entitled to damages under the terms of the White Pine Policy. Because resolution of Wedgewood's first point renders its last two points moot, no further discussion of points II and III is required.

1. As best we can discern, this point asserts there was no substantial evidence to support the judgment. Although the point recites the judgment is against the weight of the evidence, or the trial court erroneously declared or applied the law, no argument is made to attempt that explanation. As a result, we examine this point for the existence of substantial evidence.

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

3. *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

## Standard of Review

■ In a court-tried case, appellate review is governed by Rule 84.13(d) and the principles articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[3] Accordingly, the judgment must be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Dennis v. Henley*, 314 S.W.3d 786, 787 (Mo.App. S.D.2010).

## Analysis

Wedgewood's brief claims Stewart was in breach of the White Pine Policy because it had a duty to take affirmative action to correct, remove, or resolve the Allison deed of trust; however, Wedgewood conceded at oral argument that under the Policy, Stewart also had the option to simply pay the amount of loss.[4] Wedgewood's claims also ignore the fact that it had the burden of proof at trial to show a right to recovery and the amount of loss incurred as a result of the Allison deed of trust, and that the trial court, as the trier of fact, was free to believe all, none, or some of the witnesses' testimony. The bulk of Wedgewood's argument is superfluous in that it addresses how the impairment from the Allison deed of trust was initially covered

4. Paragraph 6(b)(ii) of the White Pine Policy states:

> 6. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**
>
> . . . .
>
> (b) **To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**
>
> . . . .
>
> (ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by [Stewart] up to the time of payment and which [Stewart] is obligated to pay.

under the White Pine Policy, when this was undisputed. Despite Wedgewood's disjointed argument, we are able to discern from its brief, and further clarification at oral argument, that it is asserting the trial court's decision was unsupported by substantial evidence in that Wedgewood demonstrated at trial a claim covered by the White Pine Policy and that it incurred at least $30,000 in losses as a result of the Allison deed of trust. We disagree.

■ First, we address whether substantial evidence supported the trial court's conclusion that Wedgewood's claim was not covered under the White Pine Policy. Notably, "[t]itle insurance is a contract to indemnify the insured for any losses incurred as a result of later found defects in title." *Aboussie v. Chicago Title Ins. Co.,* 949 S.W.2d 207, 209 (Mo.App. E.D.1997) (footnote omitted). The White Pine Policy explicitly explained this in paragraph 7:

> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

Under paragraph 11(b) of the White Pine Policy, payment of loss is only payable within thirty days after the "liability and the extent of loss or damage has been definitely fixed[.]" Prior to the settlement agreement between Wedgewood and the Reiersons, and the reconveyance of the property, liability of Stewart had not been definitely fixed.[5]

Wedgewood entered into a settlement agreement with the Reiersons without notifying Stewart. This settlement destroyed Stewart's subrogation rights under the White Pine Policy. Under paragraph 12 of the White Pine Policy, following the settlement and payment of a claim by Stewart, "all right of subrogation shall vest in [Stewart]." However, Wedgewood's settlement terminated Stewart's ability to recover any loss it would be entitled to because Wedgewood settled and executed a general release. Thus, we find substantial evidence supports Wedgewood's failure to satisfy the terms of the Policy.

Wedgewood's claim also fails because it did not prove any actual damages sustained that were covered under the policy. Stewart requested Wedgewood foreclose on the White Pine County property in order to ascertain its loss. However, Wedgewood neither foreclosed on the White Pine County property, nor provided any other evidence of damage.

Wedgewood asserts the "Allison deed of trust essentially had a $30,000.00 'price tag.'" In support, Wedgewood simply argues Stewart "made no assertion and presented no evidence at trial as to any other amount" of damages resulting from the Allison deed of trust. Wedgewood, however, had the burden of proof at trial and failed to present any evidence this was in fact the amount of loss suffered by Wedge-

5. Wedgewood also directs us to 20 C.S.R. 100.1.030(3), which requires every insurer upon receiving notification of a claim to provide necessary forms, instructions and reasonable assistance so claimants can comply with the policy conditions and the insurer's reasonable requirements within ten working days. We do not find this regulation supports Wedgewood's claim as: (1) Mr. Farney testified there is not a specific form required by Stewart, but the policy requires the "proof of loss" to describe the defect on the title and state to the extent possible the basis of calculating the amount of loss or damage; (2) Wedgewood has not provided Stewart with a notice of claim—Wedgewood's filing of the lawsuit in 2000 was the first that Stewart was informed of Wedgewood's claim; and (3) Stewart's instructions to liquidate its damages appear to be part of its assistance provided to help Wedgewood ascertain its damages.

wood. The mere existence of the Allison deed of trust did not establish actual loss under this lender's title insurance;[6] defects, liens, encumbrances or other matters resulting in no loss or damage to the injured claimant are unambiguously excluded from coverage under the White Pine Policy.

Wedgewood simply settled and collected its money from the Reiersons, but presented no evidence as to any actual loss caused by the Allison deed of trust. In fact, the only evidence presented regarding the reason for the difference in the amount owed, and the amount paid by the Reiersons, was that it resulted from Wedgewood trying to maximize the amount of money it could get: the amount reached was "supposedly the last dollars [the Reiersons] had" and the amount was "close enough that [Wedgewood] would not take the risk of having a bigger problem had [Wedgewood] ended up foreclosing on the property." There was no indication the reduced amount was a loss resulting from the Allison deed of trust.

Thus, nothing was presented to indicate the actual loss suffered by Wedgewood. Ascertaining this amount was precisely what Stewart was attempting to do when requesting Wedgewood liquidate its damages.[7]

Wedgewood asserts *Davis v. Stewart Title Guaranty Company,* 726 S.W.2d 839 (Mo.App. W.D.1987),[8] "outlines the law applicable in the instant matter." *Davis,* however, is inapposite to the instant case for multiple reasons. First, the obligations of the insurer set forth in *Davis,* were not general obligations of all title insurers as Wedgewood contends; rather, these obligations were the result of the policy contract made between that particular insured and insurer. Furthermore, *Davis* does not recite all the policy language necessary to determine if the policy language is similar in pertinent parts. Instead of looking to *Davis* to ascertain Stewart's obligations as a title insurer, we must look to its specific policy agreement with Wedgewood. Significantly, *Davis* involved an owner's title insurance policy not

---

6. Paragraph 7 of the White Pine Policy provides:

   7. **DETERMINATION AND EXTENT OF LIABILITY.**
   . . . .
   (a) The liability of [Stewart] under this policy to an insured lender shall not exceed the least of:
   (i) the Amount of Insurance stated in Schedule A . . .;
   (ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 . . . or . . . Section 9 . . . at the time the loss or damage insured against by this policy occurs, together with interest thereon; or
   (iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

7. We note that a foreclosure sale may not be the only means to fix an insured's loss; however, this was the route Wedgewood chose in this case.

8. In *Davis,* insured brought action to recover under title policy and vexatious refusal to pay. The Western District found that under that owner's title policy, two alternatives were open to the insurer when presented with a claim of an adverse interest to an insured property: (1) pursue a quiet title action without an unreasonable delay; or (2) pay damages within thirty days after determination. *Id.* at 845. The court also held that the liability of the insurer was definitely fixed under the terms of the policy by the insurer's relinquishment of the option to act by suit to quiet title to the recorded easement adverse to the estate of the insured. *Id.* at 851. The court ultimately upheld the judgment entered for the plaintiff on his claim for breach of a title insurance policy.

a lender's title insurance policy, as in the instant case. Additionally, contrary to the insured in *Davis*, where there were no allegations that the insured failed to comply with the terms of the policy, here the trial court found Wedgewood did not comply with the terms of the White Pine Policy. Finally, in *Davis*, there was expert testimony as to the diminution in the fair market value of the property as a result of the encumbrance, and the trial court found this testimony constituted substantial evidence to support the award of damages. *Id.* at 851. Accordingly, Wedgewood's reliance on *Davis* is misguided and offers no support or clarification for this appeal.

While Wedgewood is correct that title insurance policies are designed to provide coverage and are construed in favor of the insured, we cannot overlook the clear policy terms in the White Pine Policy applicable under these circumstances. Substantial evidence supported the trial court's finding that Wedgewood failed to show it was entitled to damages under the terms of the White Pine Policy. For the foregoing reasons, we find the judgment is supported by substantial evidence. Accordingly, Point I is denied, and the remaining two points are moot. The judgment of the trial court is affirmed.

SCOTT, C.J., and BATES, J., Concur.