**ROYAL FINANCIAL GROUP,
LLC, Respondent,**

v.

**Terri PERKINS, Appellant.**

**No. ED 98991.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 20, 2013.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 8, 2013.

Application for Transfer Denied
Dec. 24, 2013.

Jovanna R. Longo, Kansas City, MO, Patric A. Lester, St. Louis, MO, for appellant.

William F. Whealen, Jr., St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Terri Perkins appeals the trial court's judgment in favor of Royal Financial Group on Perkins's claim under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*). We reverse and remand.

## Background

Royal is in the business of consumer debt collection. In December 2008, Royal purchased a portfolio of charged-off debt from Routhmeir Sterling Inc., of Cedar Rapids, Iowa. Exhibit A to their agreement consisted of a spreadsheet listing each account file. In the agreement, Routhmeir expressly disclaimed any representations or warranties with respect to the accuracy of the account information or collectibility of the debts transferred. The agreement further acknowledges that "back-up documentation" for legal enforcement of individual account debts is not within the "initial transfer documents" but may be provided upon request for $25 per page. As relevant here, the entirety of information implicating Perkins consisted of one line in the exhibit spreadsheet supplying the following particulars:

> PERKINS TERRI [redacted]85421 CHASE MANHATTAN BANK $1,486.17

Based on this information, in January 2009, Royal filed a petition against Perkins alleging breach of contract and seeking to recover "a principal balance due in the sum of $1,486.17 (comprised of purchases, late payment fees, over limit fees, membership fees and/or other fees/charges)" plus $443.04 in interest, $222.92 in attorney fees, pre- and post-judgment interest "at the contract rate," and litigation costs. In support of its petition, Royal asserted that it was an assignee of Chase Manhattan Bank and attached a boilerplate cardholder agreement with the words "Chase Manhattan Bank" handwritten at the top of the first page. Nothing in the document identifies the lender, borrower, or amount of charges, and no names or signatures appear.

Perkins hired counsel and defended the action, thus requiring Royal to produce "back-up documentation" supporting its claim. Concurrently, Perkins filed a counterclaim alleging that Royal violated the FDCPA. In her petition, Perkins described Royal's standard pattern and practice as follows:

— Royal purchases large portfolios of old, defaulted debt for pennies on the dollar;

— Royal then files lawsuits against individuals named in the portfolio;

— Royal does not obtain from the original creditor or any previous assignee any admissible evidence establishing the amount of the debt allegedly owed by the named individuals;

— Royal does not obtain admissible evidence of the original credit agreement (including the interest rate) or chain of ownership of the debt;

— Royal regularly fails to undertake a reasonable investigation into whether the alleged debt is time-barred;

— Royal's primary purpose in filing collection actions is to obtain default judgments; and

— Royal regularly dismisses actions when the debtor defends the suit because Royal knows that it lacks admissible evidence to prevail.

With the foregoing context, Perkins's petition then alleged that Royal violated the FDCPA by: using false, deceptive, and misleading means to attempt to collect the alleged debt; falsely representing the character and legal status of the alleged debt; threatening to take an action that could not legally be taken; using unfair or unconscionable means to collect a debt; and attempting to collect amounts not authorized by contract or law. In particular, Perkins alleged *inter alia* that:

— Royal falsely represented its standing to collect the debt in that it couldn't prove its status as valid assignee of Chase Manhattan Bank.

— Royal knew that it lacked evidence to support its claim and engaged in deceptive behavior intended to intimidate Perkins into paying;

— Royal misrepresented the character of the debt by treating the entire amount as principal and seeking interest thereon without any knowledge of the actual breakdown of the total;

— Royal wrongly attempted to collect amounts not permitted by contract in that the cardholder agreement attached to its petition was inadequate to impute an obligation to Perkins for attorney fees; and

— Royal falsely represented the legal status of the alleged debt in that the last transaction on the account was more than five years before Royal filed its petition, so the statute of limitations had lapsed.

Royal declined to file any responsive pleadings. Discovery ensued and, in response to Perkins's request for admissions, Royal admitted, in sum, that:

— Royal purchased the alleged debt by assignment from a seller other than Chase Manhattan Bank;

— Royal does not possess evidence of any previous assignment(s);

— Routhmeir made no representations as to the accuracy, completeness, or enforceability of the alleged debt; and

— Royal possessed no documentation whatsoever establishing Perkins's obligations under the purported cardholder agreement as alleged in Royal's petition.

Perkins also submitted to Royal a request for production of documents broadly soliciting some memorialization of her alleged obligations or calculation of amounts outstanding. Royal failed to produce any documentation beyond the Routhmeir portfolio purchase agreement. Notably,

Royal neglected to produce any back-up documentation purportedly available under that agreement for purposes of legal enforcement of the accounts purchased thereunder. Finally, Perkins made several attempts to depose Royal's corporate representative, eventually resorting to motions to compel and for sanctions. Royal failed to produce its witness on multiple occasions, and ultimately the trial court dismissed Royal's petition for failure to comply with discovery.

The court held a hearing on Perkins's counterclaim in July 2012. Royal appeared by counsel and presented no evidence. Perkins appeared by counsel and essentially relied on the existing record (*i.e.*, Royal's petition, admissions, and responses to discovery) as conclusive evidence of Royal's liability under the FDCPA. Perkins presented no further evidence and no direct testimony.[1] With the trial court's approval, Perkins opted to present her argument in writing after the hearing in the form of proposed findings and conclusions. Royal also submitted proposed findings and conclusions. The court adopted Royal's proposal as its judgment, stating that the record was insufficient to support findings that Royal:

— used false, deceptive, or misleading means to collect a debt,

— falsely represented the character of the debt,

— falsely represented the amount of the debt,

— falsely represented the legal status of the debt,

— attempted to collect amounts not permitted by law,

— used unfair or unconscionable means to collect a debt,

— engaged in conduct to harass, oppress, and abuse Perkins,

— lacked the means to prove its case at trial, or

— filed its lawsuit without sufficient evidence.

The judgment contains no legal analysis applying the FDCPA or relevant precedent to the record before the court. Perkins appeals, asserting three points of trial court error, all of which challenge the same central finding: that Perkins presented insufficient evidence to support her claim.

### Standard of Review

In a court-tried case, appellate review is governed by the principles articulated in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Wedgewood Square Ctr. Ltd. P'ship v. Stewart Title Guar. Co.,* 347 S.W.3d 582, 585 (Mo.App.2011), citing *Murphy v. Carron,* 536 S.W.2d at 32. "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *Leimkuhler v. Gordon,* 297 S.W.3d 622, 624 (Mo.App. 2009). The "weight of the evidence" refers to probative value and not quantity. *Cooper v. Murphy,* 276 S.W.3d 380, 383 (Mo. App.2009). As applicable here, Perkins essentially contends that the trial court's judgment is against the weight of the evidence in the record.

### Discussion

As Perkins raises an issue of first impression in Missouri, we find guid-

---

1. The record indicates that Perkins moved for summary judgment based on the record, which would explain the absence of direct testimony by Perkins. However, it appears that the parties and the court treated the cause as a bench trial, so we review it as such.

ance from other courts. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." *Richmond v. Higgins*, 435 F.3d 825, 828 (8th Cir.2006); § 1692(a). Importantly, the question of whether the consumer actually owes the alleged debt has no bearing on FDCPA claims. *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992). The FDCPA is a strict liability statute; proof of one violation is sufficient to support judgment for the consumer. *Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn.1990). Statements contained in pleadings and other court filings are actionable under the FDCPA. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229 (4th Cir.2007). Actions of a debt collector are evaluated through the lens of an "unsophisticated consumer," meaning consumers of "below average sophistication or intelligence." *Owens v. Hellmuth & Johnson*, 550 F.Supp.2d 1060 (D.Minn. 2008).

Section 1692(e) of the FDCPA prohibits the use of false, deceptive, or misleading representations or means to collect a debt. Perkins alleges that Royal violated this section through numerous claims contained in its pleadings. First, she submits that Royal falsely represented that it was an assignee of Chase Manhattan Bank. We are impelled to agree. Although Royal asserted such status in its petition, it later admitted that it purchased the debt from Routhmeir and possessed no documentation linking the chain of ownership to Chase. This record can support no other finding but that Royal's assertion was false, or in the very least misleading from the perspective of an unsophisticated consumer. And even if Royal truly was a downstream assignee of Chase, the fact remains that Royal opted to allow its petition to be dismissed rather than go to the trouble of obtaining evidence of its status, which leads us to Perkins's next claim.

Perkins also asserts that Royal's lawsuit was a "threat to take any action that cannot legally be taken or that is not intended to be taken" in violation of section 1692(e)(5) of the FDCPA. Although Royal did not merely threaten suit but actually filed it, Perkins suggests that a violation still occurred, consisting of Royal's clearly empty threat to actually prosecute the lawsuit beyond the initial petition. The record confirms Perkins's characterization, and other courts have accepted similar theories.

In *Sprinkle v. SB & C Ltd.*, 472 F.Supp.2d 1235 (W.D.Wash.2006), a collector filed a garnishment action against a deployed member of the U.S. Army. The soldier's wife invoked the protections of the Servicemembers' Civil Relief Act, which provides a stay of legal proceedings involving military personnel and thus in *Sprinkle* required the collector to file an affidavit establishing the defendant's military status. Knowing that the defendant was deployed, the collector nonetheless attempted to obtain a garnishment judgment without filing the requisite affidavit of the defendant's status. The district court held that the collector "took action that could not legally be taken" in violation of § 1692(e)(5). Following precedent from sister jurisdictions, the court reasoned:

> To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority, as opposed to threatening to act where it has no legal authority, would defy the very purposes of the section. Similarly, other courts have recognized the futility of a statutory scheme that would provide more protection to debt collectors who violate the law than to those who merely threaten or pretend to do so. The opposite conclusion would be akin to attaching liability to one who

merely threatens a tortious act while absolving one who unabashedly completes it.

*Id.* at 1247. See also *Harrington v. CACV of Colorado, LLC,* 508 F.Supp.2d 128 (D.Mass.2007) (filing motion for default judgment where defendant had actually responded constituted threat to take action that cannot legally be taken).

Once Perkins hired counsel to defend the suit and took Royal to task, Royal demonstrated neither the intention or nor the ability to establish its assignee status or actually prove the claim it filed. Rather, Royal admitted that it had no documentation to substantiate its claim when it filed the suit, produced none in response to discovery requests, refused to be deposed, and allowed its petition to be dismissed. This record directly contradicts the trial court's finding (as proposed by Royal) that the evidence was insufficient to establish that Royal lacked the means to prove its case at trial or that it filed its lawsuit without sufficient evidence. On the contrary, the record clearly demonstrates that Royal could not legally prosecute its claim and never had any intention to do so. As such, the petition was an empty threat of further action that could not legally be taken or that was not intended to be taken. Recalling that the purpose of the FDCPA is to deter abusive debt collection practices, we see no meaningful distinction, from the perspective of an unsophisticated consumer, between an empty threat to file a lawsuit and empty threat to actually prosecute one once filed. Both tactics violate the spirit and letter of section 1692(e)(5).

Additionally, Perkins contends that Royal falsely represented that it was entitled to collect attorney fees, interest, and other card-related fees (*i.e.,* membership, late payment, over limit) in that Royal had no enforceable contract obligating Perkins to pay such amounts. In *McCollough v. Johnson, Rodenberg & Lauinger,* 587 F.Supp.2d 1170, 1179 (D.Mont.2008) *aff'd McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939 (9th Cir. 2011), the court held that a debt collector violated the FDCPA by claiming attorney fees not authorized by statute or contract. There, as here, the collector produced no further evidence of its alleged entitlement to attorney fees beyond an unauthenticated boilerplate cardholder agreement, which the court deemed inadequate as a basis to support the collector's claim. Thus, the court held as a matter of law that the collector violated the FDCPA, specifically 1692(e)(2)(B), by requesting fees to which it was not entitled under law. The same reasoning applies here, not only to Royal's claim for attorney fees, but also to its claims for interest and other fees comprising the total claimed in Royal's petition. As in *McCollough,* the boilerplate cardholder agreement bearing the *handwritten* words "Chase Manhattan Bank" is wholly inadequate to support Royal's claim. Royal admitted that it possessed no other documentation establishing Perkins's liability for such amounts, and it demonstrated no intention ever to prove the claims in its petition, even when prompted to do so through discovery requests. According to the reasoning affirmed by the Ninth Circuit in *McCollough,* Royal violated §§ 1692(e)(2) and (f) by claiming amounts to which it was not legally entitled.

Additionally, a collector's unfounded claim for attorney fees has also been held to constitute both a threat of action that cannot legally be taken, in violation of § 1692(e)(5), and deceptive means to collect a debt in violation of § 1692(e)(10). In *Gionis v. Javitch, Block & Rathbone,* 405 F.Supp.2d 856 (S.D.Ohio 2005), the court reasoned:

The "least sophisticated consumer," reading the affidavit [regarding the

terms of the cardholder agreement relating to attorney fees] in conjunction with the complaint, would be confused and reasonably might feel pressured to immediately pay the debt, even if she disputed its validity, in order to avoid the possibility of having to also pay [the collector's] attorney fees at some later date. [T]he "least sophisticated consumer" could interpret [the] affidavit as a threat to collect attorney fees, an action that clearly "cannot legally be taken . . ."

*Id.* at 867. We find *Gionis* persuasive and conclude that, by asserting a wholly unsupported claim for attorney fees, Royal also violated § 1692(e)(5) and (10).

In sum, Royal's petition contains statements that were in the very least deceptive and misleading, if not actually false, as Royal failed to prove otherwise. Further, the petition itself, viewed from the perspective of an unsophisticated consumer, was a deceptive attempt to collect a debt that Royal could not collect legally. This is precisely the type of abusive practice that the FDCPA is meant to prohibit.

## Conclusion

The trial court's judgment finding that Perkins' evidence was insufficient to support her claim is against the weight of the evidence and erroneously applies the law. The trial court's judgment is reversed and remanded for entry of judgment and an award of statutory damages and costs in favor of Perkins on her FDCPA claim, and for further proceedings on the issue of attorney fees and any other outstanding matters, consistent with this opinion.

ROY L. RICHTER, P.J., and GLENN A. NORTON, J., concur.